JS 44 (Rev. 2/08)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.   (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)   **NOTICE: Attorneys MUST Indicate All Re-filed Cases Below.**

| I. (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| Netwise Data, LLC 350 Camino Gardens Blvd #103<br>Boca Raton, FL 33432 | ARC Management Group, LLC<br>1825 Barrett Lakes Blvd, Kennesaw, GA 30144 |

**(b)** County of Residence of First Listed Plaintiff  Palm Beach
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant   Cobb
(IN U.S. PLAINTIFF CASES ONLY)

NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)

Edwin C. Lunsford, III
Eavenson Fraser & Lunsford, PLLC
2000 PGA Blvd. # 3200 Palm Beach Gardens, FL 33408

Attorneys (If Known)

**(d)** Check County Where Action Arose:  ☐ MIAMI- DADE  ☐ MONROE  ☐ BROWARD  ☑ PALM BEACH  ☐ MARTIN  ☐ ST. LUCIE  ☐ INDIAN RIVER  ☐ OKEECHOBEE HIGHLANDS

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

- ☐ 1 U.S. Government Plaintiff
- ☐ 3 Federal Question (U.S. Government Not a Party)
- ☐ 2 U.S. Government Defendant
- ☑ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☑ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☑ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** / **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane / ☐ 362 Personal Injury - | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product   Med. Malpractice | ☐ 625 Drug Related Seizure | 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | Liability / ☐ 365 Personal Injury - | of Property 21 USC 881 | | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel &   Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 460 Deportation |
| & Enforcement of Judgment | Slander / ☐ 368 Asbestos Personal | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 470 Racketeer Influenced and |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers'   Injury Product | ☐ 650 Airline Regs. | ☐ 830 Patent |   Corrupt Organizations |
| ☐ 152 Recovery of Defaulted | Liability   Liability | ☐ 660 Occupational | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| Student Loans | ☐ 340 Marine   Safety/Health | | | ☐ 490 Cable/Sat TV |
| (Excl. Veterans) | ☐ 345 Marine Product   **PERSONAL PROPERTY** | ☐ 690 Other | | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment | Liability / ☐ 370 Other Fraud | **LABOR** | **SOCIAL SECURITY** | ☐ 850 Securities/Commodities/ |
| of Veteran's Benefits | ☐ 350 Motor Vehicle / ☐ 371 Truth in Lending | ☐ 710 Fair Labor Standards | ☐ 861 HIA (1395ff) |   Exchange |
| ☑ 160 Stockholders' Suits | ☐ 355 Motor Vehicle / ☐ 380 Other Personal | Act | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge |
| ☐ 190 Other Contract | Product Liability   Property Damage | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) |   12 USC 3410 |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal / ☐ 385 Property Damage | ☐ 730 Labor/Mgmt.Reporting | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | Injury   Product Liability | & Disclosure Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** / **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | **FEDERAL TAX SUITS** | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting / ☐ 510 Motions to Vacate | ☐ 790 Other Labor Litigation | ☐ 870 Taxes (U.S. Plaintiff | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 442 Employment   Sentence | ☐ 791 Empl. Ret. Inc. Security |   or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/   **Habeas Corpus:** | Act | ☐ 871 IRS—Third Party | ☐ 895 Freedom of Information Act |
| ☐ 240 Torts to Land | Accommodations / ☐ 530 General | | 26 USC 7609 | ☐ 900 Appeal of Fee Determination |
| ☐ 245 Tort Product Liability | ☐ 444 Welfare / ☐ 535 Death Penalty | **IMMIGRATION** | |   Under Equal Access to Justice |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - / ☐ 540 Mandamus & Other | ☐ 462 Naturalization | | ☐ 950 Constitutionality of State |
| | Employment   Application | | |   Statutes |
| | ☐ 446 Amer. w/Disabilities - / ☐ 550 Civil Rights | ☐ 463 Habeas Corpus-Alien | | |
| | Other   Detainee | | |
| | ☐ 440 Other Civil Rights / ☐ 555 Prison Condition | ☐ 465 Other Immigration | | |
| | | Actions | | |

## V. ORIGIN (Place an "X" in One Box Only)

- ☑ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Re-filed- (see VI below)
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from another district (specify)
- ☐ 6 Multidistrict Litigation
- ☐ 7 Appeal to District Judge from Magistrate Judgment

**VI. RELATED/RE-FILED CASE(S).** (See instructions second page):

a) Re-filed Case ☐ YES ☑ NO   b) Related Cases ☐ YES ☑ NO

JUDGE   DOCKET NUMBER

**VII. CAUSE OF ACTION**

Cite the U.S. Civil Statute under which you are filing and Write a Brief Statement of Cause (Do not cite jurisdictional statutes unless diversity):

28 U. S. C. & 132(a)(2) Brach of contract

LENGTH OF TRIAL via _____ days estimated (for both sides to try entire case)

**VIII. REQUESTED IN COMPLAINT:**  ☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23   DEMAND $ 100,000.00   CHECK YES only if demanded in complaint: JURY DEMAND: ☑ Yes ☐ No

ABOVE INFORMATION IS TRUE & CORRECT TO THE BEST OF MY KNOWLEDGE

SIGNATURE OF ATTORNEY OF RECORD

DATE   4/23/15

FOR OFFICE USE ONLY

AMOUNT   RECEIPT #   IFP

AO 440 (Rev. 06/12)  Summons in a Civil Action

# UNITED STATES DISTRICT COURT

for the

Southern District of Florida

<table>
<tr><td>Netwise Data, LLC</td><td>)<br>)<br>)<br>)</td><td rowspan="2"></td></tr>
<tr><td align="center">_____<br>*Plaintiff(s)*<br>v.<br>ARC Management Group, LLC<br>_____<br>*Defendant(s)*</td><td>)<br>)<br>)<br>)<br>)<br>)<br>)</td></tr>
</table>

Civil Action No.

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)* ARC Management Group, LLC
1825 Barrett Lakes Blvd.
Kennesaw, GA 30144

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:
Edwin C. Lunsford, III, Esq
Eavenson Fraser & Lunsford, PLLC
2000 PGA Blvd. Suite 3200
Palm Beach Gardens, FL 33408

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

*CLERK OF COURT*

Date: _____        _____
                                                      *Signature of Clerk or Deputy Clerk*

AO 440 (Rev. 06/12)  Summons in a Civil Action (Page 2)

Civil Action No.

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

❑ I personally served the summons on the individual at *(place)* _____

_____ on *(date)* _____ ; or

❑ I left the summons at the individual's residence or usual place of abode with *(name)* _____

_____ , a person of suitable age and discretion who resides there,

on *(date)* _____ , and mailed a copy to the individual's last known address; or

❑ I served the summons on *(name of individual)* _____ , who is

designated by law to accept service of process on behalf of *(name of organization)* _____

_____ on *(date)* _____ ; or

❑ I returned the summons unexecuted because _____ ; or

❑ Other *(specify):*


My fees are $ _____ for travel and $ _____ for services, for a total of $ _____0.00_____ .

I declare under penalty of perjury that this information is true.


Date: _____                    _____
                                                      *Server's signature*

                                           _____
                                                      *Printed name and title*


                                           _____
                                                      *Server's address*

Additional information regarding attempted service, etc:

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

NETWISE DATA, LLC
350 Camino Gardens Blvd.
Suite 103
Boca Raton, FL 33432

                 *       Civil Case No. _____

                 *

       Plaintiff,     *      **COMPLAINT FOR:**

   v.               *      **1. BREACH OF CONTRACT**

ARC MANAGEMENT GROUP, LLC      **2. DECLARATORY JUDGMENT**
1825 Barrett Lakes Blvd     *
Kennesaw, GA 30144     *

                 *      **DEMAND FOR JURY TRIAL**

       Defendant.    *

*   *   *   *   *   *   *   *   *   *   *   *   *

## <u>COMPLAINT</u>

Plaintiff, NetWise Data, LLC  ("NWD"), by and through its counsel, Edwin C. Lunsford, III, files this Complaint against Defendant, ARC Management Group, LLC, ("ARC"), and in support thereof, states:

### <u>NATURE OF ACTION</u>

1.    This is an action brought by the Plaintiff for breach of contract by the Defendant in connection with a Strategic Marketing Alliance Agreement ("SMAA") and Mutual Nondisclosure Agreement ("MNDA") entered into between Plaintiff and Defendant. The Plaintiff contracted with the Defendant to provide information to Defendant regarding potential business customers for Defendant and to assist Defendant in securing business relationships with

such customers in exchange for a commission payment from Defendant on revenues received by Defendant from any such business relationships for the life of the relationship. In connection therewith Plaintiff provided Defendant with confidential information Plaintiff possessed regarding the American Red Cross organization (the "Red Cross"). As a direct and proximate result of Plaintiff providing such information to Defendant regarding the Red Cross, Defendant has entered into a contractual relationship with the Red Cross that generates revenue for Defendant. Defendant owes Plaintiff a commission under the SMAA and refuses to pay Plaintiff such commission.

2.      As a result of the Defendant's actions the Plaintiff has suffered damages in excess of $75,000.00.

## THE PARTIES

3.      NWD is a Florida limited liability company, having its principal place of business in Boca Raton, Florida.

4.      ARC is a Georgia limited liability company having its principal place of business in Kennesaw, Georgia.

## JURISDICTION AND VENUE

5.      This Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332(a)(2) in that the action arises between a company of a State and a company of a different State and the amount in controversy exceeds $75,000, exclusive of interests and costs.

6.      Venue properly lies within this district pursuant to 28 U.S.C. §§ 1391 (a) and (b) because a substantial part of the events or omissions giving rise to the claims asserted against ARC occurred in this district.

2

7.      Venue also properly lies in this district pursuant to the venue provisions of the MNDA.

## FACTS APPLICABLE TO ALL COUNTS

8.      NWD is based in Boca Raton, Florida, where it provides data solutions and services to its clients and customers.

9.      NWD maintains proprietary large and valuable databases of information and has valuable relationships with numerous companies in the data business.

10.     NWD routinely enters into written agreements with customers whereby the customers agree to pay NWD for information and assistance in growing a customer's business by leveraging NWD's client relationships, services and database.

11.     NWD charges its customers fees for the services NWD provides pursuant to the agreements with its customers and realizes substantial profit margins from such fees.

12.     ARC is a debt collections agency.

13.     On or about November 21, 2013, NWD and ARC entered into that certain Strategic Marketing Alliance Agreement ("SMAA") attached hereto as Exhibit A and that certain Mutual Nondisclosure Agreement ("MNDA") attached hereto as Exhibit B.

14.     Pursuant to the terms of the MNDA and SMAA, NWD agreed to provide ARC with confidential information regarding certain potential new customers for ARC and ARC agreed to pay NWD a commission of fifteen percent (15%) of ARC's gross revenue from all clients ARC obtained through information provided by NWD to ARC and introductions made to ARC by NWD.

15.     On or about November 21, 2013, NWD provided ARC with confidential information regarding the Red Cross and introduced ARC to certain strategic individuals associated with the Red Cross.

16.     ARC subsequently entered into an agreement with the Red Cross to provide debt collections services to the Red Cross.

17.     ARC is being compensated by the Red Cross for the services ARC is providing to the Red Cross.

18.     ARC has refused to pay NWD the 15% commission on the gross revenue ARC receives from the Red Cross.

19.     ARC has advised NWD in writing that ARC will not honor the terms of the SMAA and will not pay NWD the commissions owed NWD by ARC pursuant to the terms of the SMAA.

20.     As a direct and proximate result of ARC's intentional breaches of the SMAA and MNDA, NWD has suffered economic damages in excess of $100,000.00 to date and will continue to suffer damages for the life of Defendant's relationship with the Red Cross.

21.     NWD also incurred significant expenses in the form of attorneys fees incurred to address the various actions of ARC discussed herein.

## COUNT ONE – BREACH OF CONTRACT

22.     Paragraphs 1 through 21 of the Complaint are hereby re-alleged and incorporated as if fully set forth herein.

23.     ARC breached the SMAA by failing to pay NWD the commissions due from the revenues ARC has and will continue to receive from the Red Cross.

24.     ARC breached the MNDA by converting to its own use confidential information provided by NWD.

25.     The SMAA provides for payment of commissions by ARC to NWD for the life of the relationship between ARC and the Red Cross.

26.     As a result of such material breaches of the SMAA by ARC, NWD has and will continue to suffer significant damages in excess of $100,000.00 in the form of lost revenue resulting from ARC's non-payment of the commissions due.

## COUNT TWO – DECLARATORY JUDGMENT

27.     Paragraphs 1 through 21 and 23 through 26 of the Complaint are hereby re-alleged and incorporated as if fully set forth herein.

28.     As a result of such material breaches of the SMAA by ARC, NWD will continue to suffer significant damages for the duration of ARC's relationship with the Red Cross.

**WHEREFORE**, Plaintiff NWD prays for judgment in its favor and against Defendant ARC, and as relief thereto, seeks the following:

A.     An award of compensatory damages in an amount to be proven at trial to be in excess of $100,000.00;

B.     A declaratory judgment that ARC must continue to pay the Commissions to NWD for the life of ARC's relationship with the American Red Cross;

C.     Interest;

D.     Attorneys Fees;

E.     Costs of this action; and

F.     Such other further relief as the court deems appropriate.

5

## DEMAND FOR JURY TRIAL

Plaintiff demands trial by jury on all claims upon which jury trial is available.

Respectfully submitted,

4/23/15
Date

Edwin C. Lunsford, III
Florida Bar No. 867829
Eavenson Fraser & Lunsford, PLLC
2000 PGA Blvd. Suite 3200A
Palm Beach Gardens, FL 33408
P: (561) 626-1011
F: (561) 626-1042
ELunsford@EFLLawfirm.com

6

Exhibit A

## STRATEGIC MARKETING ALLIANCE AGREEMENT

THIS STRATEGIC MARKETING ALLIANCE AGREEMENT ("Agreement"), is entered into and made effective on this 21st day of November 2013 ("Effective Date") by and between ARC MANAGEMENT GROUP LLC. Having its designated business address in 1825 Barrett Lakes Blvd Kennesaw, GA 30144 and Netwise Data LLC (NWD) having its designated business address at 350 Camino Gardens Blvd Suite 103, Boca Raton Florida 33432_. For all practical purposes within this Agreement, nouns and pronouns that are used, whether singular or plural, shall have the same meaning and effect.

WHEREAS:  NWD markets and consults to the credit and collection industries regarding collection services and information products, and NWD has significant contacts and relationships with persons and entities ("NWD Prospective Client") who may, from time to time, have a need for collections services; and

WHEREAS:  ARC MANAGEMENT GROUP offers Collection Services ("Services"), and wishes to avail itself of NWD's expertise, contacts, and relationships in Collection Services  related products and services; and

WHEREAS:  NWD and ARC MANAGEMENT GROUP wish to form a strategic marketing relationship whereby NWD will market and promote ARC Management Group Services in an effort to convert NWD Prospective Client into a billable and paying client of ARC MANAGEMENT GROUP("Joint Active Client") in exchange for a pre-designated portion ARC Management Group monthly revenues, and the Parties wish to memorialize in writing the terms and conditions of such relationship.

NOW, THEREFORE, in consideration of the mutual covenants and undertakings of the parties memorialized herein, receipt and adequacy of which the Parties expressly acknowledge consideration, NWD and ARC MANAGEMENT GROUP agree as follows:

1. Term and Termination

1.1  Term:  The term of this Agreement shall begin on the Effective Date and shall continue for a period of one year, and will automatically renew unless terminated as provided herein ("Term").   However, Commissions will continue for the life of any client relationship after termination.

1.2  Termination for Convenience:   This Agreement may be terminated at any time, by either party without cause and solely for the convenience of the party giving notice by giving notice of termination in writing specifying a termination date not less than 30 days after the effective date of the notice.  Neither party will be liable to the other or to any third party for claims based on or arising out of the termination of this Agreement for convenience.

2. NWD's Duties and Role

2.1   Services:

During the Term of this Agreement, NWD will:

a)   Introduce NWD Prospective Client to ARC MANAGEMENT GROUP and promote the use of ARC Management Group ;

**3.  ARC Management Group Duties and Role**

3.1 Commission and Other Obligations.

b) 10ARC MANAGEMENT GROUP, LLC. shall pay NWD commissions ("Commission Payment") of 15% on all Gross revenue (Gross revenue is defined as total fee revenue based on collections) of Joint Active Client during the term of this Agreement for the life of the relationship between ARC MANAGEMENT GROUP, LLC. and the joint client.

c) ARC MANAGEMENT GROUP shall pay the Commission Payment to NWD once each month, based upon all payments received during the preceding month from all Joint Active Clients.

i. The delivery of the Commission Payment shall be not later than the 15th calendar day of the month following its receipt by ARC Management Group

ii. The delivery method shall be via check or money order sent to:

Netwise Data LLC
350 Camino Gardens Blvd
Suite 103
Boca Raton, Fl. 33432

d) ARC MANAGEMENT GROUP shall be responsible for the full amount of its operating, overhead, personnel, general and administrative costs and expenses, and shall not be entitled to deduct any part of such costs or expenses from any sales revenue.

IN WITNESS WHEREOF, and intending to be bound legally, each of the Parties sets its hand and seal, effective as of the date first written above.

Netwise Data LLC. (NWD)                           Ty Hamlin (ARC Management Group)

By: _____                       By: _____

Name: __Richard Bisk__                            Name: __Ty Hamlin__

Title: __COO__                                    Title: __Executive SB VP.__

NETWISE DATA

## Exhibit B

### MUTUAL NONDISCLOSURE AGREEMENT

THIS MUTUAL NONDISCLOSURE AGREEMENT (the "Agreement") is made and entered into as of _Nov 21st 2013_, by and between NetWise Data, LLC, a Florida limited liability company with an office at 350 Camino Gardens Blvd., Suite 103, Boca Raton, FL 33432 ("NetWise Data"), and _ATC Management Group LLC_ a _Georgia_ corporation with an office at _1825 Barrett Lakes Blvd, Kennesaw GA_ ("Company").   NetWise Data and Company being sometimes hereinafter individually referred to as a "Party" or collectively as the "Parties".

WHEREAS the Parties wish to mutually exchange and communicate nonpublic and confidential information of a technical, financial or business nature concerning the parties or their affiliates for the purposes of exploring a business opportunity of mutual interest or to perform work for the other party (the "Project"), and in connection with this opportunity, each party may disclose to the other party certain confidential technical and business information which the disclosing party desires the receiving party to treat as confidential;

WHEREAS the unauthorized disclosure of the aforesaid confidential information would cause a substantial and irreparable prejudice to the disclosing party; and

WHEREAS the Parties acknowledge their obligation not to disclose any confidential information to a third party, to use the confidential information solely for the purposes of the Project and not to disclose the existence of agreements, analyses, discussions or negotiations presently existing or ongoing between the Parties in connection with the Project.

NOW, THEREFORE, the Parties agree as follows:

1. <u>Definitions</u>.   For the purposes of this Confidentiality Agreement, the words below have the following meaning:

   1.1 "Confidential Information" means any information disclosed by either party, either directly or indirectly, whether disclosed prior to or after the date of this Agreement, in writing, orally or by inspection of tangible objects, including without limitation documents, operating plans, financial information, business plans, trade secrets,   know how, software and code.   Confidential Information may also include information disclosed to a disclosing party by third parties.   Confidential Information shall not, however, include any information which (i) was publicly known and made generally available in the public domain prior to the time of disclosure by the disclosing party; (ii) becomes publicly known and made generally available after disclosure by the disclosing party to the receiving party through no action or inaction of the receiving party; (iii) is already in the possession of the receiving party at the time of disclosure by the disclosing party as shown by the receiving party's files and records immediately prior to the time of disclosure; (iv) is obtained by the receiving party from a third party without a breach of such third party's obligations of confidentiality; (v) is independently developed by the receiving party without use of or reference to the disclosing party's Confidential Information, as shown by documents and other competent evidence in the receiving party's possession; or (vi) is required by law to be disclosed by the receiving party, provided that the receiving party gives the disclosing party prompt written notice of such requirement prior to such disclosure and assistance in obtaining an order protecting the information from public disclosure.   Information the disclosing party discloses or makes available to a receiving party shall be presumed to be Confidential Information and the burden of establishing that such information comes within the foregoing exceptions shall rest with the receiving party.

   1.2 Affiliate.   "Affiliate" of a Party means any individual, corporation, company, association, general or limited partnership, joint venture, trust or other entity, now or hereafter existing, which directly or indirectly, is controlled by such Party; a Person "controls" a corporation, company, association, general or limited partnership, association, joint venture, trust or other entity if it holds or is beneficially entitled to, other than by way of security interest only, more than 50% of the voting rights to the election of the directors or members of the Person concerned and "controlled" has a corresponding meaning.

1.3 Representatives. "Representatives" of a Party means the directors, officers and employees of such Party or of its Affiliates, and the accountants, appraisers, lawyers and other advisors retained by such Party in connection with the Project.

1.4 Person. "Person" includes, without limitation, any corporation, company, general or limited partnership, association, joint venture, trust and any individual.

2.  Term of the Agreement.  The term of Agreement, shall be one (1) year from the date first written above.

3.  Non-Use and Non-Disclosure.  Each party agrees not to use any Confidential Information of the other party for any purpose except to evaluate the Project.  Each party agrees not to disclose any Confidential Information of the other party to third parties or to the receiving party's or its Affiliates' employees or Representatives, except to those employees or Representatives of the receiving party or its Affiliates who are required to have the information in order to evaluate or engage in discussions concerning the Project. Neither party shall reverse engineer, disassemble or decompile any prototypes, software or other tangible objects which embody the other party's Confidential Information.

4.  Maintenance of Confidentiality.  Each party agrees that it shall take reasonable measures to protect the secrecy of and avoid disclosure and unauthorized use of the Confidential Information of the other party.  Without limiting the foregoing, each party shall take at least those measures that it takes to protect its own most highly confidential information and shall ensure that its employees who have access to Confidential Information of the other party have signed a non-use and non-disclosure agreement in content similar to the provisions hereof prior to any disclosure of Confidential Information to such employees.  Neither party shall make any copies of the Confidential Information of the other party unless the same are previously approved in writing by the other party.  Each party shall reproduce the other party's proprietary rights notices on any such approved copies in the same manner in which such notices were set forth in or on the original.

5.  No Obligation.  Nothing herein shall obligate either party to proceed with any discussion, negotiations or transaction between them, and each party reserves the right, in its sole discretion, to terminate the discussions and/or negotiations contemplated by this Agreement concerning the business opportunity. The respective obligations and commitments of the parties set forth herein will survive the end of discussions and/or negotiations between the parties.

6.  No Warranty.  ALL CONFIDENTIAL INFORMATION IS PROVIDED "AS IS." NEITHER PARTY MAKES ANY WARRANTIES, EXPRESS, IMPLIED OR OTHERWISE, REGARDING THE ACCURACY, COMPLETENESS OR PERFORMANCE OF ANY CONFIDENTIAL INFORMATION.

7.  Return of Materials.  All documents and other tangible objects containing or representing Confidential Information that have been disclosed by either party to the other party, and all copies thereof which are in the possession of the other party, shall be and remain the property of the disclosing party and shall be promptly returned to the disclosing party upon the disclosing party's written request.

8.  No License.  Nothing in this Agreement is intended to grant any rights to either party under any patent, mask work right, copyright, trademark or any other intellectual property right of the other party, nor shall this Agreement grant any party any rights in or to the Confidential Information of the other party except as expressly set forth herein.  Each party shall retain all right, title and interest in all Confidential Information it provides to the other party.

9.  Term of Confidentiality.  The obligations of each receiving party hereunder shall survive until such time as all Confidential Information of the other party disclosed hereunder becomes publicly known and made generally available through no action or inaction of the receiving party.

10. Remedies.  Each party agrees that any violation or threatened violation of this Agreement may cause irreparable injury to the other party, entitling the other party to seek injunctive relief in addition to all legal remedies.

11. Miscellaneous.

11.1 Entire Agreement.  This document contains the entire agreement between the parties with respect to the subject matter hereof and replaces all prior agreements, representations, and discussions, whether oral or written, previously entered into by the parties.  This Agreement shall bind and inure to the benefit of the parties hereto and their permitted successors and assigns.

11.2 Governing Law.  This Agreement shall be governed by the laws of the State of Florida, without reference to conflict of laws principles.

11.3 Jurisdiction.  The state and federal courts within West Palm Beach, Florida will have exclusive jurisdiction over all disputes arising out of this Agreement, and the parties irrevocably submit to such jurisdiction.

11.4 No Waiver.  Any failure to enforce any provision of this Agreement shall not constitute a waiver thereof or of any other provision hereof, nor will any partial exercise thereof preclude any other further exercise thereof or the exercise of any other right, power or privilege hereunder and under law.

11.5 Amendment.  This Agreement may not be amended, nor any obligation waived, except by a writing signed by both parties hereto.

11.6 Assignment.  Company shall not assign this Agreement, or assign or delegate any rights or obligations hereunder, without the prior written permission of NetWise Data.

11.7 Severability.  In the event any term of this Agreement is found by any court to be void or otherwise unenforceable, the remainder of this Agreement shall remain valid and enforceable as though such term were absent upon the date of its execution.

11.8 Counterparts.  This Agreement may be executed by exchange of signature pages by facsimile and/or in any number of counterparts, each of which shall be an original as against any party whose signature appears thereon and all of which together shall constitute one and the same instrument.

The duly authorized representatives of the parties have executed this Agreement below to indicate their acceptance of its terms.

NETWISE DATA, LLC.

By: _____

Name: Richard Blake

Title: COO

Company:  ARC Management Group LLC

By: _____

Name: N Hamlin

Title: Executive SR. V.P.